**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Clean Label Project Foundation,<br><br>    Plaintiff,<br><br>  v.<br><br>Mead Johnson & Company, LLC,<br><br>    Defendant. | Civil Action No. 1:20-cv-03231-TSC |

**MEAD JOHNSON & COMPANY, LLC'S**
**MEMORANDUM OF POINTS AND AUTHORITY**
<u>**IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARD.......................................................................................... 4

ARGUMENT ...................................................................................................... 5

   I.   This Action Is Removable Under CAFA ..................................................... 5

      A.  CAFA Applies to This Case ................................................................. 5

      B.  Controlling Case Law Supports the Application of CAFA ...................... 7

      C.  Plaintiff's Resort to CAFA's "Mass Action" Exception is Unavailing..................... 13

      D.  This Case Satisfies CAFA's Numerosity, Diversity and Amount in
          Controversy Requirements............................................................... 14

          1.  The Parties are Minimally Diverse ...................................... 14

          2.  The Putative Class is Sufficiently Numerous ....................... 14

          3.  The $5 Million Jurisdictional Threshold is Met. ................... 15

              a.  The Proper Test for Determining the Amount in Controversy under
                 CAFA is the Pecuniary Result to *Either* Party................... 16

              b.  Non-Aggregation Principles Do Not Apply to Cases Removed Under
                 CAFA ........................................................................... 18

  II.  Alternatively, This Action is Removable Under 28 U.S.C. § 1331................... 18

CONCLUSION.................................................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Whole Foods Mkt, Grp.*,
No. 17-2580, 2018 WL 2561041 (D.D.C. Apr. 13, 2018).......................................................8

*Animal Legal Defense Fund v. Hormel Foods Corporation*,
249 F. Supp. 3d 53 (D.D.C. 2017)...................................................................................11, 12

*Apton v. Volkswagen Grp. Of Am., Inc.*,
233 F. Supp. 3d 4 (D.D.C. 2017) .............................................................................................4

*Bradford v. George Washington Univ.*,
249 F. Supp. 3d 325 (D.D.C. 2017)........................................................................................17

*Breakman v. AOL, Inc.*,
545 F. Supp. 2d 96 (D.D.C. 2008) ............................................................................10, 11, 18

*Camreta v. Greene*,
563 U.S. 692 (2011).................................................................................................................10

*Chabot v. Chabot*,
No. 4:11–CV–217–BLW, 2011 WL 5520927 (D. Idaho Nov. 14, 2011) ...............................9

*Christie v. Islamic Republic of Iran*,
No. 19-1289 (BAH), 2020 WL 3606273 (D.D.C. July 20, 2020) .........................................10

*Dart Cherokee Basin Operating Co., LLC v. Owns*,
574 U.S. 81 (2014)......................................................................................................5, 16, 17

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005).................................................................................................................18

*Greene v. Harley-Davidson, Inc.*,
965 F.3d 767 (9th Cir. 2020) ..................................................................................................17

*Hackman v. One Brands, LLC*,
No. 18-2101 (CKK), 2019 WL 1440202 (D.D.C. Apr. 1, 2019)............................................11

*Mississippi ex. Rel. Hood v. AU Optronics Corp.*,
571 U.S. 161 (2014).................................................................................................................13

*Lafountain v. Smith & Nephew*,
No. 14cv1598 (WWE), 2016 WL 3919796 (D. Conn. July 28, 2016) ...................................19

*Lavelle v. State Farm Mut. Auto Ins. Co.*,
    235 F. Supp. 3d 217 (D.D.C. 2017) ...................................................................17

*Local 1522 of Council 4 v. Bridgeport Health Care Center, Inc.*,
    Case No. 15-cv-1019, 2018 WL 1419792 (D. Conn. Mar. 21, 2018) ....................10

*McMullen v. Synchrony Bank*,
    82 F. Supp. 3d 133 (D.D.C. 2015) .......................................................................5

*McQueen v. Woodstream Corp.*,
    672 F. Supp. 2d 84 (D.D.C. 2009) .......................................................................10

*Mut. Pharm. v. Bartlett*,
    570 U.S. 472 (2013) .............................................................................................19

*Nat'l Consumers League v. Flowers Bakeries*,
    LLC, 36 F. Supp. 3d 26 (D.D.C. 2014) ..........................................................10, 11

*Nat'l Consumers League v. General Mills, Inc.*,
    680 F. Supp. 2d 132 (D.D.C. 2010) ...............................................................10, 11

*Nat'l Consumers League v. Gerber Prods. Co.*,
    Case No. 2014 CA 008280B, 2015 WL 4664213 (D.C. Sup. Ct. Aug. 5, 2015) ...................21

*Organic Consumers Association v. Hain Celestial Group, Inc.*,
    285 F. Supp. 3d 100 (D.D.C. 2018) ...............................................................11, 12

*Paleteria La Michoacana, Inc. v. Productos Lacesteos Tocumbo S.A. De C.V.*,
    79 F. Supp. 3d 60 (D.D.C. 2015) .........................................................................9

*Rotunda v. Marriott Int'l, Inc.*,
    123 A.3d 980 (D.C. 2015) ........................................................................... *passim*

*S. Fla. Wellness, Inc. v. Allstate Ins. Co.*,
    745 F.3d 1312 (11th Cir. 2014) ...........................................................................17

*Samuel v. Wells Fargo & Co.*,
    311 F. Supp. 3d 10 (D.D.C. 2018) .......................................................................15

*Sloan v. Soul Circus, Inc.*,
    No. 15-01389 (RC), 2015 WL 9272838 (D.D.C. Dec. 18, 2015)...........................17

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013).............................................................................................18

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)............................................................................................10

*Tatum v. Laird,*
    444 F.2d 947 (D.C. Cir. 1971) ..................................................................................16

*In re U-Haul Int'l, Inc.,*
    No. 08-7122 2009 WL 902414 (D.D.C. Apr. 6, 2009)............................................7

*Z Channel, Ltd. v. Home Box Office, Inc.,*
    931 F.2d 1338 (9th Cir.1991) ...................................................................................9

*Zuckman v. Monster Beverage Corp.,*
    958 F. Supp. 2d 293 (D.D.C. 2013) ....................................................................10, 11

**Statutes**

21 U.S.C. § 350a ................................................................................................19, 21

28 U.S.C. § 1331 .........................................................................................*passim*

28 U.S.C. § 1332(d) ....................................................................................*passim*

D.C. Code § 28-3901 ..................................................................................*passim*

D.C. Code § 28-3905(a) ...................................................................................11

D.C. Code § 28-3905(k) ...............................................................................*passim*

D.C. Code § 48-103 .............................................................................................3

**Other Authorities**

21 C.F.R. §§ 106-107 .......................................................................................19

21 C.F.R. § 106.3 .........................................................................................19, 21

21 C.F.R. § 106.120 .........................................................................................19

21 C.F.R. § 107.20(e) .......................................................................................21

21 C.F.R. § 107.200 .....................................................................................19, 21

D.C. Rule 23 ................................................................................................7, 8

D.C. Rule 54(c) .................................................................................................9

Federal Rule of Civil Procedure 23 ............................................................*passim*

Federal Rule of Civil Procedure 54(c) ................................................................9

S. Rep. No. 109-14 (2005) ...................................................................................5

## INTRODUCTION

This action should remain in Federal Court.  Plaintiff, Clean Label Project Foundation, ("Clean Label" or "Plaintiff"), seeks punitive damages and extensive injunctive relief as to six popular products, and has also pled entitlement to relief under statutory provisions that allow actual, treble, and $1500/violation monetary awards.  It does this in a representative capacity for persons in the District of Columbia who have purchased specified products manufactured by Mead Johnson & Company, LLC ("Mead Johnson").  Nevertheless, it argues that this action, brought under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et. seq.* ("CPPA") should be remanded to the D.C. Superior Court because it is not removable under either the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), or under 28 U.S.C. § 1331. Plaintiff is incorrect on both points.

First, this case is removable under CAFA because it meets each of CAFA's requirements, *i.e.,* (i) the parties are minimally diverse; (ii) there are at least 100 members of the proposed "class"; (iii) the matter is indeed a "class action" as defined under CAFA; and (iv) the claims set forth in the Complaint show that amount in controversy exceeds $5 million.  28 U.S.C. §§ 1332(d)(2), (5)(B).  Plaintiff does not dispute that the parties are minimally diverse, nor that it seeks to represent in excess of 100 D.C. residents.  Instead, Plaintiff contends that this case does not meet CAFA's definition of a class action because it seeks only injunctive relief under the CPPA.  But this argument ignores the plain language of CAFA, which defines "class action" to include not only civil actions filed under Rule 23 of the Federal Rules of Civil Procedure, but also those filed under other "*similar State statute[s] . . . authorizing* action[s] . . . brought by 1 or more representative persons *as a class action*."  28 U.S.C. § 1332(d)(1)(B) (emphasis added). Here, Plaintiff makes clear in its Complaint that it is also proceeding under CPPA § 28-3905(k)(1)(D)(i), which expressly contemplates, and authorizes, the filing of suits "on behalf of

the interests of a consumer or a class of consumers . . . ." *See* Complaint ("Compl."), Doc. No. 13, at ¶ 132.  It thus meets CAFA's definition of a "class action".

Clean Label also ignores the fact that Plaintiff's Complaint is not, in fact, limited to injunctive relief.  For starters, Clean Label expressly seeks punitive damages and attorney's fees. It also seeks "judgment against Defendant including the remedies included under CPPA §§ 28-3905(k)(2)(A)-(F)." *See* Compl. at p. 30, Prayer for Relief.  These provisions authorize the recovery of actual damages, and treble or statutory damages of $1500/violation, whichever is greater.

Finally, this argument ignores the controlling decision of the D.C. Circuit Court in *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980 (D.C. 2015), which holds that any representative action seeking monetary damages is subject to the District of Columbia's version of FRCP 23. This case is therefore removable under CAFA.

Plaintiff makes a throw away argument about whether CAFA's jurisdictional amount in controversy can be met, but this argument can be quickly dispatched: CAFA requires this Court to aggregate the amount in controversy, and Mead Johnson's notice of removal pleads facts that show the amount in controversy is easily satisfied.  But if there were any doubt, Mead Johnson has submitted herewith a declaration from Marianne Wadsworth, who attests that Mead Johnson has sold tens of thousands of units of the relevant products at issue in Washington D.C. over the last three years.  Plaintiff's claimed entitlement to statutory damages easily puts this case over the $5,000,000.00 threshold.

Finally, Plaintiff contends that Mead Johnson's alternative basis for removal—28 U.S.C. § 1331—is not valid, contending that because Plaintiff has framed its suit as one challenging only Mead Johnson's marketing and advertising claims, it does not implicate the regulations of

the Infant Formula Act.  But this hyper-literal reading of select portions of Plaintiff's Complaint ignores others which reveal Plaintiff's real objective—the removal of the products from the market, along with product reformulations and/or additional on-label warnings.  These ends overtly implicate and undermine the objectives of the Infant Formula Act, rendering this case removable under 28 U.S.C. § 1331.

## BACKGROUND

Mead Johnson is one of the world's largest manufacturers of infant formula in the United States and across the world.  Its Enfamil®, Nutramigen®, and Enfagrow® brands form the core of its market-leading infant and toddler nutrition lineup.

Plaintiff filed this action again Mead Johnson in Superior Court for the District of Columbia, alleging that the marketing and sale of its products violates the CPPA.  Specifically, Plaintiff alleges that six varieties of Mead Johnson products (collectively the "Products")[1] are "adulterated" under D.C. Code §48-103, *et seq*., because they allegedly contain Bisphenol A, lead, and cadmium.  *See* Compl. at ¶ 87.  Plaintiff also alleges that the Products are "unsafe" and "contain dangerous levels of multiple known neurotoxins."  *Id*. at ¶¶ 21, 87. Plaintiff alleges that, as a consequence, the marketing of the Products as promoting "brain health" is "false, misleading, and deceptive" (Compl. ¶¶ 86, 110, 117) and that D.C. consumers have been "enticed to purchase the Products over those of Mead Johnson's competitors "on the basis of these false and misleading claims" (*Id*. ¶ 32).

---

[1] The products named in the Complaint are:  Enfamil's Nutramigen® Hypoallergenic Ready to Use Infant Formula with iron (32 fl. Oz.), Neuro-Pro Infant Formula Milk-Based with Iron (20.7 oz.), EnfaCare – Neuro-Pro (12.8 oz.), Reguline Infant Formula – Milk-Based with Iron (12.4 oz.), ProSobee Soy Infant Formula for Sensitive Tummy (12.9 oz.), and Premium Infant & Toddler Formula – Toddler Transitions (20 oz.).   Plaintiff also states that it may add additional products to its Complaint at a later date.

Plaintiff purports to bring this action in a representative capacity, expressly invoking two separate provisions of the CPPA. First, Plaintiff invokes § 28-3905(k)(1)(C), which permits a "nonprofit organization . . . on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, [to] bring an action seeking relief from the use of a trade practice in violation of a law of the District." D.C. Code § 28-3905(k)(1)(C); *see also* Compl. ¶¶ 49, 130-131. Plaintiff also invokes D.C. Code § 28-3905(k)(1)(D)(i), which provides that a "public interest organization may, **on behalf of the interests of a consumer or class of consumers**, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District." D.C. Code § 28-3905(k)(1)(D)(i) (emphasis added); *see also* Compl. ¶¶ 49, 132-133.

Plaintiff seeks "judgment against Defendant **including the remedies available under D.C. Code §§ 28-3905(k)(2)(A-F)**." (emphasis added). Plaintiff makes clear that it seeks declaratory and injunctive relief, a corrective marketing campaign, and punitive damages. Compl. ¶ 30 (Prayer for Relief). Plaintiff also seeks costs, attorneys' fees, expert fees and prejudgment interest. *Id.* But the "the remedies available under D.C. Code §§ 28-3905(k)(2)(A-F)" also include actual damages, and treble damages or statutory penalties of $1500 per violation. Plaintiff has also broadly asked the court to give "such further relief as the Court deems just and proper." *Id.*

## LEGAL STANDARD

A defendant has the right to remove a civil action from a state court where the federal court has original subject matter jurisdiction over the matter. *Apton v. Volkswagen Grp. Of Am., Inc.*, 233 F. Supp. 3d 4, 10 (D.D.C. 2017). CAFA provides that federal district courts have jurisdiction over "class actions" in which: (1) there is minimal diversity; (2) the class contains at least 100 members; and (3) the amount in controversy is at least $5 million. *See* 28 U.S.C. §§

1332(d)(2)(A), (d)(5)(B), (d)(6).[2]  A defendant may also remove a civil action from state court to federal court on the grounds that the case "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The party supporting removal bears the burden of establishing the Court's jurisdiction.  *McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 138 (D.D.C. 2015).

## ARGUMENT

## I.  THIS ACTION IS REMOVABLE UNDER CAFA

### A.  CAFA Applies to This Case

CAFA defines a class action as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure *or similar statute* or rule of jurisdictional procedure **authorizing an action to be brought by [one] or more representative persons as a class action.**"  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  Indeed, in drafting CAFA, the Senate Judiciary Committee stated that the "definition of 'class action' is to be interpreted liberally" and that it "should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority."  S. Rep. No. 109-14 at 35 (2005).  Rather, "lawsuits that resemble a purported class action should be considered class actions for the purposes of applying these provisions."  *Id.*

Plaintiff first contends that that because it chose to style its suit as a "representative" suit on behalf of the "general public" as opposed to a "class action" under the CPPA, that it is immune from removal under CAFA.  *See* Motion to Remand (Doc. No. 14) at pp. 6-7.  But this

---

[2] "No antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co., LLC v. Owns*, 574 U.S. 81, 89 (2014); *see also* S. Rep. No. 109-14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")

contention ignores the plain language of CAFA itself, which permits the removal of "any civil action filed under [FRCP] rule 23 . . . **or similar State statute or rule** of judicial procedure *authorizing* an action to be brought by one or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  It also ignores the plain language of its own Complaint, where it claims to have brought the action pursuant to D.C. Code § 28-3905(k)(1)(D)(i), which authorizes class actions.  Compl. ¶ 49.  It does not get any simpler:  Plaintiff has brought its suit under a State statute that is not only *similar* to FRCP 23, it expressly permits class actions, and Plaintiff claims to be proceeding under that very section.  *See* D.C. Code § 28-3905(k)(1)(D)(i) (". . . [A] public interest organization may, on behalf of the interests of a consumer **or a class of consumers**, bring an action seeking relief . . .).  *Id.*

And, while Plaintiff attempts to frame its action as one solely on behalf of the "general public" under the CPPA § 28-3905(k)(1)(C)(*see* Motion to Remand at p. 7), it was Plaintiff, not Mead Johnson, that invoked § 28-3905(k)(1)(D)(i).  *See, e.g.*, Compl. ¶ 49 ("Plaintiff, acting on behalf of the general public as private attorneys pursuant to D.C Code §§ 28-3905(k)(1)(C)-(D)[*sic*]"); Compl. ¶ 132 ("Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), 'public interest organizations may, on behalf of the interests of a consumer or class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of the law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person or such trade practice.'") and Compl. ¶ 135 ("Plaintiff is a public-interest organization pursuant to D.C. Code § 28-3905(k)(1)(D)(i) and brings this action on behalf of members of the general public who could bring this action under D.C. Code § 28-3905(k)(1)(A)").  Despite Plaintiff's repeated reliance on the phrase "general public" (borrowed

from CPPA § 28-3905(k)(1)(C)) in its attempt to avoid CAFA, Plaintiff has expressly invoked CPPA § 28-3905(k)(1)(D)(i).

Notably, § 28-3905(k)(1)(D)(ii) provides that a suit brought under § 28-3905(k)(1)(D)(i) "shall be dismissed if the court determines that the public interest organization does not have sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." This limitation parallels the D.C. Superior Court Rule 23's requirement that the class representative adequately protect the interests of the class, which in turn underscores the fact that D.C. Code § 28-3905(k)(1)(D)(i), similar to FRCP 23, authorizes an action to be brought as a class action, and is therefore removable under CAFA.

### B.   Controlling Case Law Supports the Application of CAFA

The question of whether representative actions under the CPPA are subject to D.C.'s Rule 23, and thus subject to removal under CAFA, is a question for the local D.C. courts to decide. *See In re U-Haul Int'l, Inc*., No. 08-7122 2009 WL 902414, at *1 (D.D.C. Apr. 6, 2009). Over a decade ago, the court in *U-Haul Int'l* noted that the answer to this question is "not clear as a matter of District of Columbia law". *Id.* Six years later, the D.C. Court of Appeals addressed this question in *Rotunda v. Marriott Int'l Inc*., holding that such actions should proceed "within the Rule 23 framework." 123 A.3d 980, 989 (D.C. 2015).

In *Rotunda*, the plaintiff brought suit under DC's consumer protection laws seeking damages on behalf of himself and the "general public", while expressly disclaiming any intent to seek class certification pursuant to D.C. Rule 23. 123 A.3d at 982. The trial court dismissed the representative portion of plaintiff's suit, holding that a D.C. consumer protection claim "brought by an individual on behalf of himself and other similarly situated members of the general public **is in essence a class action**, whether pled as such or not, and must satisfy the requirements of

Rule 23." *Id.* (emphasis added).  On appeal, the D.C. Court of Appeals affirmed, holding that there was "no unambiguous evidence, in the 2000 amendments or the supporting legislative history, that the Council meant to displace the Rule 23 framework in favor of improvised due process and management devices for a whole sub-set of representative actions."  *Id.* at 988. Importantly, the *Rotunda* Court held that it would not adopt plaintiff's position that the D.C. Council "abrogated or repealed [D.C. Rule 23's] application to representative suits under the CPPA" without "clear", "explicit" and "unambiguous" evidence that the Council had done so. *Id.* at 989, *citing Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011).  Finding that the plaintiff could provide no such evidence, the Court concluded that the D.C. Council did not "repeal[] the rule's application to representative suits under the CPPA" and that consequently the "necessary vehicle for suits seeking class-wide damages remains Rule 23".  *Id.*  In so holding, the court highlighted the myriad problems that would follow from permitting such cases to operate outside of the framework of Rule 23, fearing that "deep uncertainty. . . would beset the effort to regulate CPPA actions on behalf of the 'general public'", and the result would be an "array of makeshift 'Rule 23-Lite' controls . . . ."  *Id.* at 986-989.  The court also feared that removing such cases from the auspices of Rule 23 would "tie the hands of trial judges for a potentially large array of representative actions."  *Id.* at 986-87.

*Rotunda* thus makes clear that a representative action for damages under the CPPA, regardless of whether it is styled as a class action or as a suit on behalf of the "general public", is subject to D.C. Superior Court Rule 23.  *Id.*; *see also Alston v. Whole Foods Mkt, Grp.*, No. 17-2580, 2018 WL 2561041, at *1 (D.D.C. Apr. 13, 2018) (finding that *Rotunda* stands for the proposition that "Federal Rule of Civil Procedure 23 applies to CPPA actions under D.C. law.").

Plaintiff advances a two-pronged response in an attempt to avoid *Rotunda*, but neither succeeds.  First, Plaintiff argues that it is only seeking injunctive relief, not the type of statutory or actual damages at issue in *Rotunda*.  But this assertion simply does not comport with the Complaint itself, which expressly states that it is seeking judgment including "the remedies available under D.C. Code § 28-3905(k)(2)(A)-(F)" (*see* Compl. at p. 30, Prayer for Relief). These provisions, in turn, allow the recovery of actual damages, and either treble damages or statutory penalties of $1,500/violation.  That Plaintiff's Prayer for Relief may not list actual/treble damages is immaterial, as it has unequivocally claimed relief under statutory provisions that authorize monetary damages.  *Id.*[3]  And, notwithstanding Plaintiff's protestations to the contrary, the Complaint nowhere expressly disclaims an intention to seek the other remedies available under the CPPA, such as monetary damages of $1500 per violation.  In fact, it request such "**further relief as the Court deems just and proper**."  (Emphasis added).[4]

Moreover, Plaintiff expressly indicates that it seeks punitive damages on behalf of itself and those that it seeks to represent.  *Id.*  Punitive damages are a quintessential form of monetary relief.  *See, e.g., Paleteria La Michoacana, Inc. v. Productos Lacesteos Tocumbo S.A. De C.V.*, 79 F. Supp. 3d 60, 72 (D.D.C. 2015) (describing punitive damages as a "form of monetary

---

[3] Plaintiff's Complaint also vaguely requests "any such further relief as this Court may deem just and proper."  *See* Compl. at p. 30, Prayer for Relief.

[4] In any event, Plaintiff's failure to specifically enumerate actual, treble or statutory damages is not dispositive of the relief that may be obtained under the Complaint.  *See* Fed. R. Civ. P. 54(c) (non-default judgment "should grant the relief to which each party is entitled, **even if the party has not demanded that relief in its pleadings**.") (emphasis added); and D.C. Rule 54(c) (same); *see also, e.g., Chabot v. Chabot,* No. 4:11–CV–217–BLW, 2011 WL 5520927 at *5 (D. Idaho Nov. 14, 2011) (Citing FRCP 54(c), finding that "…a prayer for relief does not necessarily limit the nature or scope of relief a trial court may grant. Plaintiffs are entitled to whatever relief is appropriate to the claims alleged in the complaint and proved."); *Z Channel, Ltd. v. Home Box Office, Inc.,* 931 F.2d 1338, 1341 (9th Cir.1991) (reversing summary judgment; plaintiff may be entitled to damages even though the complaint seeks only injunctive and declaratory relief).

relief"); *Local 1522 of Council 4 v. Bridgeport Health Care Center, Inc.*, Case No. 15-cv-1019, 2018 WL 1419792 at \*2 (D. Conn. Mar. 21, 2018) (describing monetary damages as including "compensatory, consequential, and punitive damages, and attorneys' fees"); *c.f., McQueen v. Woodstream Corp.,* 672 F. Supp. 2d 84, 88 (D.D.C. 2009) ("Punitive damages are properly considered part of the amount in controversy."). In fact, Plaintiff's purported entitlement to punitive damages confirms that it must also be seeking actual damages. Under *Campbell v State Farm*, punitive damages must bear a reasonable relationship to the actual harm caused. *See Christie v. Islamic Republic of Iran,* No. 19-1289 (BAH), 2020 WL 3606273 at \*28 (D.D.C. July 20, 2020), *quoting State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) ("courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff **and to the general damages recovered**.") (emphasis added). Without a claim for actual economic injury, Plaintiff cannot possibly claim a right to punitive damages. Plaintiff's attempt to distinguish itself from *Rotunda* on this basis therefore fails.

Second, Plaintiff invokes a series of non-binding[5] cases—*Breakman*, *Zuckman, General Mills* and *Flowers Bakeries*[6]— to no avail, because each of these cases (a) pre-date *Rotunda*; and

---

[5] It is axiomatic that federal district courts are not bound to follow decisions of other federal district courts, even within the same circuit. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citing 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.02[1] [d] (3d ed. 2011)).

[6] *See Breakman v. AOL, Inc.,* 545 F. Supp. 2d 96 (D.D.C. 2008) ("*Breakman*"); *Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132 (D.D.C. 2010) ("*General Mills*") *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293 (D.D.C. 2013) ("*Zuckman*"); *Nat'l Consumers League v. Flowers Bakeries,* LLC, 36 F. Supp. 3d 26 (D.D.C. 2014) ("*Flowers Bakeries*").

(b) are distinguishable in any event because Plaintiff's suit here is expressly brought under D.C. Code § 28-3905(k)(1)(D)(i) (which includes the CPPA's "class" provision).

It is of critical significance that these cases pre-date *Rotunda* because the Court in *Rotunda* expressly held that, in the absence of "clear", "express" and "unambiguous" evidence to the contrary, Rule 23 was the "necessary vehicle" for bringing representative actions under the CPPA. *Rotunda*, 123 A.3d at 989. None of those courts had the benefit of, nor did they apply, the stringent standard set by *Rotunda* as necessary to avoid the application of Rule 23 (and thus avoid the application of CAFA).

Moreover, this suit is factually distinguishable from the decisions on which plaintiff relies in an important, outcome-determinative respect. Unlike in this case, Plaintiffs in those other cases did not bring their claims under D.C. Code § 28-3905(k)(1)(D)(i).[7] This is an important distinction because, as discussed above, § 28-3905(k)(1)(D)(i) is the CPPA's "class" provision.

Plaintiff also relies upon two cases that post-date *Rotunda*: *Animal Legal Defense Fund v. Hormel Foods Corporation*, 249 F. Supp. 3d 53 (D.D.C. 2017) and *Hackman v. One Brands, LLC*, No. 18-2101 (CKK), 2019 WL 1440202 (D.D.C. Apr. 1, 2019), but those cases are also distinguishable. Unlike Plaintiff here, the plaintiffs in *Animal Legal Defense Fund* and *Hackman* sought *only* injunctive relief—not punitive damages and other remedies available under § 28-3905(a)(2)(k)(A)-(F) as Plaintiff does here. And, beyond this dispositive distinguishing fact, at least one D.C. court has questioned the reasoning of *Animal Legal Defense Fund*. In *Organic Consumers Association v. Hain Celestial Group, Inc.*, 285 F. Supp. 3d 100 (D.D.C. 2018),

---

[7] In *Breakman* and *General Mills*, the plaintiffs did not specify which section(s) of § 28-3905 (k)(1) they were proceeding under. The plaintiff in *Zuckerman* was proceeding under § 28-3905 (k)(1)(B). *See Zuckerman*, 958 F. Supp. 2d at 296. And in *Flowers Bakeries*, the plaintiff was proceeding under all four standing provisions. 36 F. Supp. 3d at 35.

11

plaintiff brought a suit under unspecified provisions of the CPPA, seeking injunctive relief on behalf of himself and the "general public" for alleged misleading marketing claims.   In connection with a challenge to plaintiff's standing to seek injunctive relief, the court observed that "[r]ecent case law has…somewhat obscured the mechanism by which non-profit and public interest organizations can bring such actions on behalf of the public at large or specific groups of consumers."   *Organic Consumers Ass'n*, 285 F. Supp. 3d at *4.   The court explained that, because *Rotunda* only addressed the pre-2012 provisions of the CPPA (*i.e.*, prior to the addition of the class action provision invoked by Plaintiff here), the *Rotunda* court was not afforded an opportunity to weigh in on whether the new provisions "displace the Rule 23 framework", and as such "constitutes a matter of first impression."   *Id.*   Thus, the court explained, "the effect of the 2012 amendments on the class certification requirement that *Rotunda* held exists for representative suits for damages under the earlier iteration of the CPPA—and that [*Animal Legal Defense Fund*] suggested does not apply to suits for injunctive relief—remain . . . debatable."   *Id.*

In sum, there is, to date, no contrary decision which both pre-dates *Rotunda* and which is also factually on point with Plaintiff's claims here – *i.e.,* in a circumstance where Plaintiff expressly invokes § 28-3905(k)(1)(D)(i), makes an express claim for punitive damages, and claims entitlement to judgment for all remedies available under §§ 28-3905(k)(2)(A)-(F).   As such, the dated and non-binding precedent relied upon by Plaintiff does not supplant *Rotunda*.   While *Rotunda* addressed a case expressly seeking actual and treble statutory damages, this case does too, even if Plaintiff has tried to mask it.   And, even if the Court were to accept Plaintiff's contention that it only seeks injunctive relief and punitive damages, its reasoning would still apply with equal force here.   Most, if not all, of the problems that the *Rotunda* recognized would plague representative actions for money damages will apply with equal force to a claim for

injunctive relief and punitive damages.  It strains credulity, and flies in the face of the long-standing protections afforded by federal and local class action rules, for Plaintiff to think that it can obtain a sweeping injunction against Mead Johnson, to claims significant punitive damages, attorneys' and expert fees, and prejudgment interest, all in the name of D.C. consumers, while simultaneously stripping those consumers of the protections afforded by the class action mechanism.

### C.    Plaintiff's Resort to CAFA's "Mass Action" Exception is Unavailing

Plaintiff contends that CAFA "carves out an exception for private attorney general suits akin to [the] instant action", arguing that CAFA prevents removal where "all of the claims in the action are asserted on behalf of the general public...pursuant to a State statute specifically authorizing such an action."  *See* Motion to Remand at pp. 11-12, *quoting* 28 U.S.C. § 1332(d)(11)(B)(ii)(3).  But this provision only defines the boundaries of a "mass action" for purposes of removal based on CAFA.  *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(3) ("(ii) the term 'mass action' shall not include any civil action in which . . . all of the claims asserted in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class)".  The removal of mass actions in governed by a completely separate set of provisions under CAFA (28 U.S.C. § 1332 (d)(11)) than those governing the removal of class actions (28 U.S.C. § 1332(d)(2)); *see also Mississippi ex. Rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014).  Mead Johnson did not remove this case based on CAFA's "mass action" provision, so whether Plaintiff's suit would be entitled to one of the exceptions to removal of a mass action is wholly irrelevant.  As established above, this action is removable under CAFA's class action removal provision, and this mass action provision does not affect that analysis.

**D.      This Case Satisfies CAFA's Numerosity, Diversity and Amount in Controversy Requirements**

As established above, the instant action is properly removable as a class action under CAFA. And because Mead Johnson has met its burden of establishing the remaining requirements for removal under CAFA—minimal diversity, numerosity, and amount in controversy—this Court has CAFA diversity jurisdiction.

**1.      The Parties are Minimally Diverse.**

CAFA requires only that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In its Notice of Removal, Mead Johnson established that the Parties were minimally diverse. *See* Notice of Removal (Doc. No. 1) at ¶¶ 12-14. Mead Johnson is a citizen of Delaware, with its principal place of business in Illinois. *Id*. at ¶ 13. Plaintiff is a non-profit corporation with its principal place of business in Colorado (*Id*. at ¶ 12) and is seeking to represent consumers of the Products across the District of Columbia. *Id*. at ¶ 12; *see also* Compl. at ¶ 115. Thus, CAFA's minimal diversity requirement is satisfied because Plaintiff and the class members its purports to represent are citizens of Colorado and the District of Columbia, while Mead Johnson is a citizen of Illinois and Delaware. Plaintiff does not dispute that CAFA's minimal diversity requirement is satisfied. *See* Motion to Remand at pp. 14-15.

**2.      The Putative Class is Sufficiently Numerous.**

CAFA also requires that the putative class include at least 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). Mead Johnson has met its burden of establishing that the putative class is sufficiently numerous in its Notice of Removal. *See* Notice of Removal at ¶ 11. Plaintiff seeks to sue on behalf of consumers and the "general public of the District of Columbia" who purchased Mead Johnson's Products for a three-year period beginning om August 24, 2017.

Compl. ¶¶ 36, 115; *see also Samuel v. Wells Fargo & Co.*, 311 F. Supp. 3d 10, 20 (D.D.C. 2018) (applying three-year statute of limitations to D.C. consumer protection claims).  As a market-leader in infant formula, the number of consumers who have purchased the Products in the District of Columbia since August 24, 2017 far exceeds CAFA's minimum numerosity threshold of 100 individuals.  Plaintiff does not dispute that CAFA's minimal numerosity requirement is satisfied.  *See* Motion to Remand at pp. 14-15.

### 3.      The $5 Million Jurisdictional Threshold is Met.

Finally, CAFA requires that "the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs." 28 U.S.C. § 1332(d)(2).  Once again, in its Notice of Removal, Mead Johnson met its burden of establishing that the amount in controversy here exceeds the jurisdictional amount.  *See* Notice of Removal, Doc. 1, ¶¶ 15-24.  It has also supplied herewith a declaration establishing that Mead Johnson has sold tens of thousands of units of the Products during the last three years.  See Declaration of Marianne Wadsworth, attached hereto as Exhibit A.

Plaintiff has not challenged Mead Johnson's calculations relating to the amount in controversy.  Motion to Remand at pp. 14-15.  It has made no evidentiary showing to contradict that factual assertions in Mead Johnson's Notice of Removal.  Specifically, Plaintiff does not dispute that the practical effect of the injunction sought by Plaintiff would, assuming successful, require the removal of all Products from the shelves of retailers across the District of Columbia and the cessation of the sale of the Products in the District of Columbia while Mead Johnson reformulates and/or relabels the Products.  Nor does Plaintiff dispute the unavoidable and enormous costs of such an undertaking.   Likewise, Plaintiff does not dispute that its sought-after relief would also require Mead Johnson to undertake a costly "corrective advertising" campaign.

*See* Motion to Remand at pp. 14-15.   Plaintiff does not dispute that these endeavors will undoubtedly exceed $5 million.  *Id*.

Evidence in support of the claimed amount in controversy is only required when the plaintiff contests, or the court questions, the defendant's allegations.  *Dart Cherokee Basin*, 574 U.S. at 89.  Here, Plaintiff has made no effort to dispute Mead Johnson's assertions regarding the jurisdictional amount in controversy, aside from invoking the adjective "speculative" (Motion to Remand at p. 15).  Nothing further from Mead Johnson is required.  Even if it were, however, the number of units sold, multiplied by the $1,500/violation statutory damages provision easily suffices.

Instead, Plaintiff contends that: (1) the amount in controversy should be limited to the less than $300 that Plaintiff spent purchasing the Products for testing samples, and that the cost to Mead Johnson of the injunctive relief and corrective action sought by Plaintiff are not relevant to the analysis; and (2) in any event Mead Johnson is not entitled to aggregate the costs of injunctive relief and corrective action for purposes of meeting the jurisdictional threshold. Plaintiff is wrong on both counts.

### a.   The Proper Test for Determining the Amount in Controversy under CAFA is the Pecuniary Result to *Either* Party.

Plaintiff provides no legal support whatsoever for its assertion that the amount in controversy should be limited to the small amount that Plaintiff paid for the Products for testing purposes.  Nor could it.  The D.C. Circuit has made plain that when determining amount in controversy, courts should employ the "either-viewpoint" approach to calculating amounts in controversy—which allows for consideration of either the value of the plaintiff's requested relief or the defendant's potential costs—in cases where only equitable relief is sought.  *See Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1, 92, 92 S.Ct.

2318, 33 L.Ed.2d 154 (1972) ("[P]articularly where purely injunctive relief is sought, the amount in controversy may be measured by either the value of the right sought to be gained by the plaintiff . . . (or) the cost (of enforcing that right) to the defendant."); *see also, e.g.*, *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (the amount in controversy is an "estimate of how much will be put at issue in the litigation" and is "not discounted by the chance that the plaintiff will lose on the merits"); *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (CAFA requires a removing defendant to show only that "it is reasonably possible that the potential liability exceeds $5 million."); *Lavelle v. State Farm Mut. Auto Ins. Co.*, 235 F. Supp. 3d 217, 223 (D.D.C. 2017) ("[C]alculating the amount in controversy for purposes of [CAFA] is less a prediction of how much the plaintiffs are ultimately likely to recover than it is an estimate of how much will be put at issue during the litigation") (internal citations and quotations omitted).   The burden on defendant is merely to offer a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold."   *Dart Cherokee*, 574 U.S. at 89.

And courts are likewise clear that punitive damages, and attorneys' fees provided by statute, are properly considered as part of the amount in controversy.   *See, e.g.*, *Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 334 (D.D.C. 2017) (punitive damages are considered for CAFA's amount in controversy); *Sloan v. Soul Circus, Inc.*, No. 15-01389 (RC), 2015 WL 9272838, at *9 (D.D.C. Dec. 18, 2015) ("Attorney fees are part of the amount in controversy if they are provided for by statute.").

Finally, Plaintiffs claim for "judgment against Defendant for the remedies under  §§ 28-3905(k)(2)(A)-(F) embraces claims for statutory damages of $1500/violation.  As the declaration

of Marianne Wadsworth makes clear, Mead Johnson has sold many thousands of units of these products into Washington DC annually, as well as over the last three years.

### b.    Non-Aggregation Principles Do Not Apply to Cases Removed Under CAFA.

CAFA makes plain that damages are to be aggregated.  *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs."); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (CAFA requires the court to "determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of the proposed class . . . .").  Two of the cases cited by Plaintiff in support of its position to the contrary—*Zahn* and *Snyder* (see Motion to Remand at p. 15, n. 23)—pre-date CAFA and thus plainly have no relevance to the inquiry.  And, because the court in *Breakman vs. AOL* did not treat the claim as a class action under CAFA, it likewise has no relevance as to whether aggregation of damages is proper in a case removed under CAFA).

## II.    ALTERNATIVELY, THIS ACTION IS REMOVABLE UNDER 28 U.S.C. § 1331

In the alternative, removal is also appropriate under 28 U.S.C. § 1331 because the Complaint implicates significant federal issues.  Under binding Supreme Court precedent, a federal court may exercise federal question jurisdiction over a state law claim where: (1) the "state law claim necessarily raise[s] a stated federal issue; (2) the federal issue is "actually disputed and substantial"; and (3) the exercise of federal jurisdiction will not "disturb [] any congressionally approved balance of federal and state jurisdictional responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Even in the absence of express preemption, "a state law may be impliedly pre-empted where it is impossible for a

private party to comply with both state and federal requirements." *Mut. Pharm. v. Bartlett*, 570 U.S. 472, 480 (2013) (int. citations and quotations omitted); *see also Lafountain v. Smith & Nephew*, No. 14cv1598 (WWE), 2016 WL 3919796, at *4 (D. Conn. July 28, 2016).

The Infant Formula Act, along with its enabling regulations, comprehensively regulates how infant formula is made, its contents and ingredients, the labels and warnings on its packaging, and its recall. *See, e.g.*, 21 U.S.C. § 350a, 21 C.F.R. §§ 106-107. Before any new infant formula is sold, its manufacturer must submit a notice to FDA that includes its "quantitative formulation"—how much of each ingredient it contains—as well as a statement of the "basis on which each ingredient" meets the requirements of being safe and suitable. 21 U.S.C. § 350a(d)(1)(A); 21 C.F.R. § 106.120(a), (b)(6)(ii). The notice must also assure FDA that the formula contains the required vitamins and nutrients, as demonstrated by testing. 21 U.S.C. §§ 350a(b)(3), (d)(1)(C); 21 C.F.R. § 106.120(b)(5)(ii). The manufacturer may not sell the formula until FDA has had 90 days to review the notice, during which time FDA "will . . . notify" the manufacturer of any deficiencies in the notice's required assurances, which would prevent the formula from being sold. 21 U.S.C. § 350a(c)(1)(B); 21 C.F.R. § 106.120(e). FDA may also require additional information, which may start a new 90-day review period. 21 C.F.R. §§ 106.120(e), (f). These same FDA review procedures apply when a manufacturer makes a "major change" to an existing formula. 21 U.S.C. § 350a(c)(2)(B); 21 C.F.R. § 106.3. Major changes include "any reformulation," 21 U.S.C. § 350a(d)(1)(B), or "any new formulation . . . or any change that causes an infant formula to differ fundamentally . . . in composition from any previous formulation produced by the manufacturer." 21 C.F.R. § 106.3. The Formula Act also provides detailed rules and regulations governing the recall of any infant formula product. 21 C.F.R. § 107.200, *et seq*.

Plaintiff contends, disingenuously, that its claims do not implicate these comprehensive regulations because "the safety of Defendant's Products is not at issue" and that Plaintiff's suit is only concerned with "Defendant's advertising and marketing campaign proclaiming the Products' benefits to infant health and brain development." Motion to Remand at pp. 17-20. This is assertion is belied by the Complaint, which repeatedly asserts that the Products are "adulterated", contain "contaminants" and are "unsafe for their intended population." *See* Compl. at ¶ 87; *see also* Compl. ¶¶ 108, 118, 119, 127, 128. And, while Plaintiff's Complaint undoubtedly goes to great pains to frame its suit as one as targeting Mead Johnson's affirmative marketing and advertising claims, it is ultimately impossible for Plaintiff to disguise its true aim— the removal of the Products in their current formulation from the market, and either the reformulation of the products or the addition of additional warnings concerning the presence of the alleged "contaminants". This aim becomes clear, for example, through Plaintiff's repeated allegations that Mead Johnson has deceived consumers regarding the "true **nature, quality and ingredients** of the Products" and Plaintiff's desire to enjoin the "false and misleading marketing and **sale** of [the] Products." Compl. ¶ 36 (emphasis added).

More fundamentally, Plaintiff's attempt to frame its suit as one targeting solely Mead Johnson's affirmative marketing and advertising defies common sense. If, as the Complaint repeatedly alleges, Plaintiff believes that that the Products are "adulterated", "unsafe" and "contain dangerous levels of multiple known neurotoxins" (*see, e.g.*, ¶¶ Compl. ¶¶ 21, 30, 87), (an allegation which Mead Johnson strenuously denies) it strains reason for Plaintiff to assert that its ultimate objective is simply to enjoin the Defendant from affirmatively marketing and advertising the Products' brain health and development benefits, and to otherwise leave the Products in their current formulations (which, according to Plaintiff are "adulterated" and

"unsafe" and with "dangerous levels of multiple known neurotoxins") on the market for purchase and consumption.

Plaintiff's real agenda— the removal and reformulation (and/or additional label warnings) — thus laid bare, there can be little doubt that the Formula Act, which regulates the removal of infant formula from the market (21 C.F.R. § 107.200, *et. seq*.), reformulation (21 U.S.C. § 350a, *et seq*., 21 C.F.R. § 106.3), and any warnings appearing on infant label formulas (21 C.F.R. § 107.20(e)), is implicated.[8]

**CONCLUSION**

Wherefore, Mead Johnson respectfully requests that this Court deny Plaintiff's motion for Remand.

---

[8] Given the above, Plaintiff's analogy of this case to *Nat'l Consumers League v. Gerber Prods. Co*., Case No. 2014 CA 008280B, 2015 WL 4664213 (D.C. Sup. Ct. Aug. 5, 2015), is of no avail.   In Gerber, the plaintiff challenged only defendant's affirmative marketing and advertising relating to the product's claimed ability to reduce the risk of developing allergies. Gerber, 2015 WL 4664213 at *1.   Unlike here, in *Gerber* there were no allegations that the defendant's products were adulterated or unsafe for consumption.

Dated:  January 8, 2021          Respectfully Submitted,
                                 STEPTOE & JOHNSON LLP


                                   /s/*Jamie Witte*
                                 Jamie Witte (D.C. Bar No. 1044090)
                                 227 West Monroe Street, Suite 4700
                                 Chicago, IL 60606
                                 Tel: (312) 577-1300
                                 Fax: (312) 577-1370
                                 Email: jwitte@steptoe.com

                                 Michael J. Baratz (D.C. Bar No. 480607)
                                 Lia Metreveli (admitted *pro hac vice*)
                                 1330 Connecticut Avenue, NW
                                 Washington, DC 20036
                                 Tel: (202) 429-3000
                                 Fax: (202) 429-3902
                                 Email: mbaratz@steptoe.com
                                 Email: lmetreveli@steptoe.com

                                 Anthony J. Anscombe (admitted *pro hac vice*)
                                 Mary E. Buckley (admitted *pro hac vice*)
                                 227 W. Monroe Street, Suite 4700
                                 Chicago, Illinois 60606
                                 Tel: (312) 577-1300
                                 Fax: (312) 577-1370
                                 Email: aanscombe@steptoe.com
                                 Email: mbuckley@steptoe.com

                                 *Counsel for Defendant Mead Johnson & Company, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of January, 2021, the foregoing is being electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/*Jamie Witte*
Jamie Witte (D.C. Bar No. 1044090)