**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CLEAN LABEL PROJECT FOUNDATION,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 20-cv-3231 (TSC) |
| **MEAD JOHNSON & COMPANY, LLC.,** | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION

Plaintiff Clean Label Project Foundation ("Clean Label") has brought this action on behalf of itself and the "general public," against Defendant Mead Johnson & Company, LLC, alleging deceptive labeling, marketing, and sale of certain baby formula products, in violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq*. Plaintiff seeks injunctive relief and punitive damages. In short, Plaintiff claims that Defendant markets its products as supporting infant brain health, but the products actually contain harmful neurotoxins. Plaintiff originally brought this suit in D.C. Superior Court, but Defendant removed it to this court. Plaintiff now seeks to have this action remanded. *See* Pl. Mot., ECF No. 12. Because Defendant has failed to show that this court has subject matter jurisdiction, Plaintiff's motion to remand will be GRANTED.

# I.    BACKGROUND

Plaintiff is a non-profit organization under D.C. Code § 28-3905(k)(1)(C), that purchased

Defendant's products to "test or evaluate their qualities."[1]  Compl. ¶¶ 20, 131, ECF No. 12-1.

The tested products include: Nutramigen Hypoallergenic Ready to Use Infant Formula with Iron

(32 fl. oz), Neuro Pro Infant Formula Milk-Based with Iron (20.7 oz); EnfaCare – Neuro Pro

(12.8 oz), Reguline Infant Formula – Milk-Based with Iron (12.4 oz), ProSobee Soy Infant

Formula for Sensitive Tummy (12.9 oz), and Premium Infant & Toddler Formula – Toddler

Transitions (20 oz).  *See* Compl. ¶ 19.  Plaintiff alleges that these products contain "dangerous

levels of multiple known neurotoxins" including lead, Bisphenol A, and Cadmium at "unusually

high" levels "relative to competitive infant formula brands."  Compl. ¶¶ 21, 27, 93–104.

Plaintiff claims that because Defendant touts "brain health" in its marketing, "D.C. consumers

. . . are led to believe that the Product is safe for their baby and free of concerning levels of

contaminants" and "are enticed to purchase this Product over" competitors' products "on the

basis of these false and misleading claims."  Compl. ¶¶ 30–32.  Plaintiff further pleads that

Defendant either knew or should have known that its marketing representations regarding its

products' effects on infant brain health are false.  Compl. ¶¶ 105–14.

Plaintiff filed its Complaint in D.C. Superior Court on August 21, 2020, "on behalf of

[itself] and the general public of the District of Columbia," pursuant to D.C. Code § 28-

3905(k)(1)-(2).  Compl. ¶ 115.  It also alleges that Defendant's products are "[a]dulterated"

under D.C. Code § 48-103.  Compl. ¶ 128.  Defendant filed a timely notice of removal to this

---

[1] *See also* D.C. Code § 28-3905(k)(1)(D)(i) (providing that "public interest organization[s] may, on behalf of the interests of a consumer or class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person or such trade practice").

court, arguing that this action is removable pursuant to 28 U.S.C. §§ 1331, 1332 because a federal question is implicated, and this is a class action to which the Class Action Fairness Act ("CAFA") applies.  *See* Notice of Removal at 3–13, ECF No. 1.

## II.    LEGAL STANDARD

While a plaintiff may ordinarily select a state court to adjudicate federal claims, a defendant may remove a civil action to a federal district court that has original subject matter jurisdiction over the dispute.  *See* 28 U.S.C. § 1441(a).  "The party seeking removal of an action bears the burden of proving that jurisdiction exists in federal court," and "if federal jurisdiction is doubtful, a remand to state court is necessary."  *Downey v. Ambassador Devel., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008); *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) ("Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand.").  Indeed, if "at any time . . . it appears that the district court lacks subject matter jurisdiction," it must remand the action to state court.  28 U.S.C. § 1447(c).

Because appellate review of a remand decision is generally prohibited, *see Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(d)), "the legal standard for removal has largely been developed in the district courts."  *Clean Label Project Found. v. Abbott Lab'ys, Inc.*, No. 21-CV-3247 (BAH), 2022 WL 1658813, at *2 (D.D.C. May 25, 2022).

## III.    DISCUSSION

### A.  Class Action Fairness Act

CAFA provides that federal district courts have original jurisdiction over any civil suit where (i) the amount in controversy, exclusive of interest and costs, exceeds $5 million; (ii) the matter "is a class action;" (iii) there is minimal diversity, such that "any member of a class of

plaintiffs is a citizen of a State different from any defendant;" and (iv) the proposed class is at least 100 members. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B). Importantly, CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id*. § 1332(d)(1)(B).

Plaintiff brings this suit under CPPA provisions § 28-3905(k)(1)-(2), as a non-profit public interest organization on behalf of itself and the "general public." Compl. ¶ 115. Nowhere in the Complaint does Plaintiff describe the suit as a "class action," define a putative class, or make any attempt to comply with either Federal Rule 23 or the nearly identical D.C. Superior Court Rule 23. But Plaintiff does seek injunctive relief and punitive damages, citing D.C. Code § 28-3905(k)(2)(A-F), *see* Compl. at 30, and the effect of that relief, if granted, "may differ little if at all from the relief that plaintiff would have sought had it elected to bring this suit as a federal class action in the first instance under Rule 23(b)(2)." *Clean Label Project Found.*, 2022 WL 1658813, at *7.

Because Plaintiff has not brought this suit as a class action, the dispute here centers on whether the CPPA is a "*similar State statute*" that meets the threshold requirement for an action to fall within CAFA's ambit. Defendant argues that this case is removable—and thus remand should be denied—because Plaintiff expressly seeks punitive damages, *i.e.*, monetary damages. *See* Def. Opp'n at 7–13, ECF No. 15. Its argument has three pillars: (i) the D.C. Court of Appeals' decision in *Rotunda v. Marriott International, Inc.,* 123 A.3d 980 (D.C. 2015), holding that § 28-3905(k)(1) CPPA actions requesting monetary damages must seek class certification, renders this action subject to CAFA; (ii) to the extent pre-*Rotunda* cases in this Circuit have ruled otherwise, those cases are effectively abrogated based on the D.C. Court of Appeals'

interpretation of the CPPA; and (iii) post-*Rotunda* cases only stand for the proposition that *Rotunda*'s holding will not be extended to § 28-3905(k)(1) CPPA actions seeking only injunctive relief. *See* Def. Opp'n at 7–13. Having reviewed the briefs and relevant precedent, the court remains unconvinced that this action is removable. Consequently, Defendant has failed to carry its burden.

In *Rotunda*, the D.C. Court of Appeals upheld the D.C. Superior Court's dismissal of a CPPA representative claim for money damages where the complaint "disclaimed any intention to seek class certification under [D.C.] Superior Court Rule of Civil Procedure Rule 23." 123 A.3d at 982. The Court of Appeals found that although D.C. Code § 28-3905(k)(1) does not specify "how broadly-contoured actions for damages are to be regulated or managed," the D.C. Council did not intend to displace Rule 23, and a plaintiff brining a representative CPPA claim for money damages must seek to certify a class under Rule 23. *Rotunda,* 123 A.3d at 984–85. The effect is that a plaintiff who brings a representative suit under § 28-3905(k)(1), seeking money damages, must seek to certify a class at the appropriate stage of litigation—typically the motion to dismiss stage.[2]

But whether a subset of CPPA litigants must seek to certify a class at the motion to dismiss stage is a distinct question, separate and apart from whether the CPPA is a "similar State statute" governing state class actions. *See Hackman v. One Brands, LLC*, No. CV 18-2101 (CKK), 2019 WL 1440202, at *3 (D.D.C. Apr. 1, 2019) (citing *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 36 (D.D.C. 2014)). The D.C. Court of Appeals has

---

[2] *See* Fed. R. Civ. P. 23(c) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

answered the first question, and courts in this district have answered the second question many times over.

Pre-*Rotunda*, courts in this Circuit reached a consensus view that removal of CPPA cases under CAFA was impermissible. *See e.g.*, *Hackman*, 2019 WL 1440202, at *3 (citing *Nat'l Consumers League, LLC*, 36 F. Supp. 3d at 36; *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101–02 (D.D.C. 2008); *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 304–06 (D.D.C. 2013) (explaining that courts in this Circuit have consistently held that "claims brought pursuant to the []CPPA are not class actions removable to federal court under CAFA"). In *Nat'l Consumers League*, a court in this district explained that "[a]bsent the hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification, courts have held that private attorney general statutes [like the CPPA] lack the equivalency to Rule 23 that CAFA demands." 36 F. Supp. 3d at 36 (internal quotation marks and citation omitted).

The D.C. Court of Appeals' decision in *Rotunda* was animated by the same concerns that courts in this district have addressed at length—the inadequacy of the CPPA's procedural safeguards for litigants' due process rights. Indeed, the D.C. Court of Appeals explained that the CPPA does not require plaintiffs to make reasonable efforts to supply adequate notice to potential class members, offer an opportunity to opt-out from participation, or establish procedures to promote "the manageability of suits brought on behalf of a potentially vast number of plaintiffs." *Rotunda,* 123 A.3d at 984–87. Recognizing the shortcomings of the CPPA, the Court of Appeals interpreted it as requiring Rule 23 compliance for damages suits. *Rotunda,* 123 A.3d at 984–85. But Defendant has failed to demonstrate that *Rotunda* alters the CPPA removal and remand jurisprudence of this Circuit.

Post-*Rotunda*, courts in this district have continued to remand CPPA actions to D.C. Superior Court, explaining that the CPPA "lacks the 'requisite procedural safeguards' to qualify as a state statute sufficiently equivalent to Rule 23 as required by CAFA" when the action is not filed under Rule 23.  *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40, 44 (D.D.C. 2020) (quoting *Zuckman*, 958 F. Supp. 2d at 305); *see e.g.*, *Hackman*, 2019 WL 1440202, at *3 (continuing to apply this court's pre-*Rotunda* line of CPPA removal cases and remanding the action to D.C. Superior Court); *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 64 (D.D.C. 2017 (reiterating that the CPPA is "a separate and distinct procedural vehicle from a class action" and remanding to D.C. Superior Court (quotation omitted)).

Further, while Defendant is correct that—post-*Rotunda*—courts in this district have only remanded in CPPA cases where a plaintiff sought purely injunctive relief or monetary relief on behalf of themselves, *see Clean Label Project Found.*, 2022 WL 1658813, at *8 (collecting post-*Rotunda* cases and remanding to D.C. Superior Court),[3] the court is unpersuaded that the long and undisturbed line of cases finding that CPPA actions are not removable has been expunged by the *Rotunda* decision.

---

[3] In *Clean Label Project Foundation*, Plaintiff claimed it had tested certain Abbot Laboratories products and determined that, contrary to the products' labels, the products contained "dangerous levels of lead and cadmium" that were "incompatible with" product descriptions "promoting brain development, bone development, and immune support."  *Id*. at *1 (internal quotation marks and citations omitted).  Clean Label sued in D.C. Superior Court "on behalf of the general public," seeking injunctive relief but also citing to CPPA provisions § 28-3905(k)(2)(B)–(F) that allow for punitive damages.  *Id*. at *2, 10.  The only distinction of note between the prior Clean Label case and this one is that here, Plaintiff has expressly asked for punitive damages, and perhaps only mistakenly did so there.  *See id*. at *10–11 (finding that Clean Label's "citation to '(B–F)' is, as this dispute reflects, somewhat inartful drafting," and holding that the action nonetheless sought purely injunctive relief).

Having reviewed the relevant caselaw, the court declines to hold that representative CPPA actions seeking only unspecified punitive damages and injunctive relief are removable under CAFA.  Notably absent from Defendant's briefing is any explication of any case, in this Circuit or any other, in which a court has found that a state statute is a "similar State statute" within the meaning of CAFA.  Defendant's failure to do so is not surprising given that courts in this district have found repeatedly that the CPPA is not such a statute.  As then-Chief Judge Howell put it in *Clean Label*, "[t]he collective wisdom reflected in these decisions is compelling, and defendant offers no reasons to stray from this well-trod path."  2022 WL 1658813 at *9.

**B.  Federal Question**

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Supreme Court has explained that such jurisdiction is properly exercised "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Here, Plaintiff has not pleaded allegations against Defendant under the Constitution, any federal statute, or treaties.  Nor does the Complaint otherwise implicate a federal issue on its face.

Defendant makes a last-ditch attempt to establish federal jurisdiction by arguing federal preemption—that Plaintiff's Complaint implicates the "Infant Formula Act along with its enabling regulations" which "comprehensively regulate[] how infant formula is made, its contents and ingredients, the labels and warnings on its packaging, and its recall."  Def. Opp'n at 19 (citing 21 U.S.C. § 350a, 21 C.F.R. §§ 106–107).  Defendant argues that *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (*Grable*), confers federal question jurisdiction.  *See* Def. Opp'n at 18.

In *Grable*, the Supreme Court reaffirmed that federal courts can hear "claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id*. at 312. The Court explained that a federal court may exercise federal question jurisdiction over a state law claim where: (1) the "state law claim necessarily raise[s] a stated federal issue"; (2) the federal issue is "actually disputed and substantial"; and (3) the exercise of federal jurisdiction will not "disturb [] any congressionally approved balance of federal and state jurisdictional responsibilities." *Id*. at 314.

Defendant's argument fails at *Grable* step one because it is not at all clear from the Complaint or from Defendant's briefing why the relief Plaintiff requests would raise any issues of federal law. Plaintiff alleges that Defendant's advertising and marketing—claiming that its infant formulas support brain and immune health— is misleading because of various neurotoxins found in the products, and it seeks an order that Defendant correct its advertising. *See* Compl. ¶¶ 88–114; *id.* at 30. Defendant counters that these allegations raise a federal question because selling infant formula in the United States requires the manufacturer to satisfy a number of federal regulatory requirements: (i) the manufacturer must "submit a notice" to the Food and Drug Administration ("FDA") that "includes its 'quantitative formulation'—how much of each ingredient it contains—as well as a statement of the 'basis on which each ingredient' meets the requirements of being safe and suitable"; (ii) "[t]he notice must also assure FDA that the formula contains the required vitamins and nutrients, as demonstrated by testing"; (iii) FDA then has ninety days to review before the manufacturer can sell the product, and if FDA flags "any deficiencies in the notice's required assurances," the manufacturer cannot sell the product; (iv) if additional information is requested then the ninety day review begins again; (v) similar regulatory procedures apply if the manufacturer makes a "major change" to an existing formula

or if there is a recall.  *See* Def. Opp'n at 18 (citing 21 U.S.C. §§ 350a(b)(3), (d)(1)(A)–(C); *id.* §§ 350a(c)(1)(B), (2)(B); 21 C.F.R. §§ 106.120(a), (b)(5)(ii)–(6)(ii); *id.* § 106.120(e); *id.* § 106.3).

Even amidst this extensive federal regulatory landscape, Defendant has not shown that this suit involves a federal law, regulation, or agency action approving the advertising and marketing of Defendant's products.  The fact that the FDA has approved the use of the ingredients at issue does not mean that the advertising of these formulas is not misleading.  *See Animal Legal Def. Fund*, 249 F. Supp. 3d at 56–59 (holding that the CPPA action was not removable under federal question jurisdiction and explaining that even if federal law granted defendant "the right to use various terms on its meat labels . . . they do not appear to have given [d]efendant any sort of approval to produce the *advertisements* challenged in this case").

This is not the first time a defendant has attempted to transform a CPPA claim into a federal law claim to bring it within federal jurisdiction, and this case fares no better than the previous ones.  *See Clean Label Project Found.*, 2022 WL 1658813 at *3–6 (rejecting defendant's *Grable* argument regarding plaintiff's CPPA claim); *Animal Legal Def. Fund*, 249 F. Supp. 3d at 57–59.  Because the Complaint pleads no federal question, this court does not have federal question jurisdiction.

## C.  <u>Diversity Jurisdiction</u>

While Defendant did not explicitly remove this case under 28 U.S.C. § 1332(a)—the traditional diversity statute—and has made no specific arguments in support of removal under that statute, its Notice of Removal does cite 28 U.S.C. § 1332.  *See* Notice of Removal at 1.  Therefore, the court briefly addresses this potential basis for removal and finds that this action does not satisfy federal diversity jurisdiction as pleaded.

Under 28 U.S.C. § 1332(a), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."

The Complaint does not allege where the parties are domiciled, but, regardless of whether there is complete diversity between the parties, the amount in controversy is not met because Plaintiff seeks only injunctive relief and unspecified punitive damages.  *See* Compl at 30. Furthermore, because the non-aggregation principle applies to punitive damages when assessing the amount in controversy for purposes of diversity jurisdiction, any estimate of punitive damages must be divided by the number of persons represented in this action.  *See Toxin Free USA*, 507 F. Supp. 3d at 46 ("The sole exception to the nonaggregation principle is when 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969))); *see also Hackman*, 2019 WL 1440202, at *6–7 (collecting cases in this Circuit, the Fifth Circuit, the Ninth Circuit, and Eleventh Circuit Courts of Appeals and finding universal consensus that the non-aggregation principle applies to punitive damages).  Defendant has argued that the number of persons represented by "the general public" in this suit is likely in the thousands.  *See* Wadsworth Decl. ¶ 4, ECF No. 15-1.  Assuming that this suit could even be maintained as a class action, the court is satisfied that, using the non-aggregation principle, punitive damages would not be high enough to meet the amount in controversy threshold.

## IV.    CONCLUSION

For the reasons explained herein, Plaintiff's motion to remand, ECF No. 12, will be

GRANTED.  This case will be REMANDED to the District of Columbia Superior Court.  A

corresponding Order will accompany this Memorandum Opinion.


Dated: March 31, 2023


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge